RANDALL S. LUSKEY (SBN: 240915)
 rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice forthcoming*)
 ratkins@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3183
Facsimile: (212) 492-0183

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.; and RASIER, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| A.H.M., an individual,<br><br>             Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC.,<br>a Delaware Corporation; RASIER, LLC,<br>a Delaware Limited Liability Company;<br>and DOES 1 through 50, Inclusive.<br><br>             Defendants. | Case No. 3:23-cv-03482-JSC<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF NEW YORK AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   December 14, 2023<br>Time:   10:00 a.m.<br>Courtroom:  8 – 19th Floor<br><br>Action Filed:   July 13, 2023<br>Trial Date:   None Set |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Please take notice that on December 14, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Court, at the courtroom of the Honorable Jacqueline Scott Corley, Courtroom 8, 19th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California, Defendants Uber Technologies, Inc. and Rasier, LLC ("Uber") will and hereby do move, pursuant to 28 U.S.C. § 1404(a), to transfer this case to the United States District Court for the Northern District of New York (the "Motion").

Uber respectfully requests the transfer of this action to the Northern District of New York, pursuant to 28 U.S.C. § 1404(a), in the interest of justice and convenience to the parties and witnesses.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Randall S. Luskey, Declaration of Alejandra O'Connor, and the exhibits attached thereto, the complete files and records in this action, oral argument of counsel, authorities that may be presented at or before the hearing, and such other and further matters as this Court may consider.


DATED:  August 9, 2023                    **PAUL, WEISS, RIFKIND, WHARTON &**
                                          **GARRISON LLP**


                                          By:    */s/ Randall S. Luskey*_____
                                                 RANDALL S. LUSKEY
                                                 ROBERT ATKINS

                                          *Attorney for Defendants*
                                          UBER TECHNOLOGIES, INC.
                                          and RASIER, LLC

1

## **<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL AND PROCEDURAL BACKGROUND............................................3

I.      Background on Uber. ...................................................................................3

II.     Background on this Complaint. ...................................................................3

III.    Background on Similar Decisions in Other Uber Cases. ............................4

LEGAL STANDARD...........................................................................................5

ARGUMENT .......................................................................................................6

I.      This Case Could Have Been Brought in New York. ...................................6

II.     The Private Interest Factors, Including the Convenience of the Parties and Witnesses, Favor Transfer. ..........................................................................6

       A.      The Northern District of New York Is More Convenient for the Parties..............................................................................................6

            1.      Plaintiff is Not a Resident of This District and Her Decision to File Here Is Entitled Minimal Consideration.............................7

            2.      New York Is the Only State That Can Provide Complete Resolution and Process and Transfer Will Therefore Avoid Parallel Proceedings.........................................................8

       B.      The Northern District of New York Is More Convenient for Potential Witnesses. .............................................................................9

            1.      The Relevant Evidence and Witnesses Are Located in New York. ...................................................................................9

            2.      The Northern District of New York Can Compel Critical Witnesses to Testify at Trial, While the Northern District of California Cannot.............................................................11

       C.      The Location of Uber's Corporate Headquarters Does Not Render the Northern District of California a More Convenient Venue. ...........................12

III.    The Public Interest Factors Favor Transfer. ............................................14

       A.      Local Interest and the Burden on the Courts and the Jury....................................14

       B.      Litigation Costs – Avoiding Unnecessary Expenses and Duplicative Litigation ...........................................................17

       C.      Familiarity with Applicable Law. ........................................................18

CONCLUSION...................................................................................................19

- i -

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allred* v. *Innova Emergency Med. Assocs., P.C.*,
  2018 WL 4772339 (N.D. Cal. Oct. 1, 2018)..........................................................................14

*Atl. Marine Const. Co.* v. *U.S. Dist. Ct. for the W. Dist. of Tex.*,
  571 U.S. 49 (2013).................................................................................................................5

*Biggers* v. *Borden, Inc.*,
  475 F. Supp. 333 (E.D. Pa. 1979) ..........................................................................................9

*Blankenship* v. *Medtronic, Inc.*,
  2013 WL 3322031 (C.D. Cal. June 7, 2013) ........................................................................10

*Brown* v. *DetailXPerts Franchise Sys., LLC*,
  2020 WL 5106842 (N.D. Cal. Aug. 31, 2020) ........................................................................4

*United States* v. *Casey*,
  420 F. Supp. 273 (S.D. Ga. 1976)...........................................................................................9

*Chesapeake Climate Action Network* v. *Export-Import Bank*,
  2013 WL 6057824 (N.D. Cal. Nov. 15, 2013) ......................................................................14

*Coleman* v. *Mallinckrodt Enter. LLC*,
  2019 WL 1779574 (N.D. Cal. Apr. 23, 2019) .......................................................................11

*Contact Lumber Co.* v. *P.T. Moges Shipping Co.*,
  918 F.2d 1446 (9th Cir. 1990) ................................................................................................8

*Cooney* v. *Osgood Machinery, Inc.*,
  81 N.Y.2d 66, 72 (1993).......................................................................................................18

*Davidson* v. *United Auto Credit Corp.*,
  2020 WL 8968956 (C.D. Cal. Oct. 23, 2020)........................................................................15

*Dawson* v. *Medtronic, Inc.*,
  2013 WL 3322040 (C.D. Cal. Mar. 8, 2013)...................................................................11, 18

*Decker Coal Co.* v. *Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) ..............................................................................................5, 6

*Fein* v. *Public Serv. Coordinated Transp.*,
  165 F. Supp. 370 (E.D. Pa. 1958) ........................................................................................17

*Flexible Funding, LLC* v. *Iron Mountain Info. Mgmt.*,
  2005 WL 2431241 (N.D. Cal. Sept. 30, 2005).......................................................................6

*Foster* v. *Nationwide Mut. Ins. Co.*,
  2007 WL 4410408 (N.D. Cal. Dec. 14, 2007).........................................................................7

*Gilmore-Webster* v. *Bayou City Homebuyers Inc.*,
  2019 WL 1100492 (N.D. Cal. Mar. 8, 2019)........................................................................15

- ii -

*Gorne & Walker* v. *Uber Techs.,*
Inc., CGC-19-575852 (San Francisco Super. Ct. July 1, 2019)............................................4, 16

*Hyundai Space & Aircraft Co.* v. *Boeing Co.,*
1999 WL 910131 (N.D. Cal. Oct. 12, 1999) ...........................................................15

*Italian Colors Rest.* v. *Am. Express Co.,*
2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) .....................................................17

*Jane Doe* v. *Uber Techs., Inc.,*
2017 WL 2352032 (N.D. Cal. May 31, 2017) ................................................. *passim*

*Jane Doe* v. *Uber Techs., Inc.,*
CGC-17-556481 (San Francisco Super. Ct. Aug. 11, 2017) ....................................4

*Jane Doe* v. *Uber Techs., Inc.,*
CGC-19-579901 (San Francisco Super. Ct. Mar. 24, 2020)....................................4

*Kawamura* v. *Boyd Gaming Corp.,*
2012 WL 6047728 (D. Haw. Dec. 5, 2012) ..............................................................9

*Kay* v. *Nat'l City Mortg. Co.,*
494 F. Supp. 2d 845 (S.D. Ohio 2007) .....................................................................9

*Lapachet* v. *Cal. Forensic Med. Grp., Inc.,*
2017 WL 3917209 (N.D. Cal. Sept. 7, 2017) ...........................................................7

*Lueck* v. *Sundstrand Corp.,*
236 F.3d 1137 (9th Cir. 2001) ................................................................................14

*Metz* v. *U.S. Life Ins. Co. in City of New York,*
674 F. Supp. 2d 1141 (C.D. Cal. 2009) ....................................................................6

*Nat'l Fire Ins. Co. of Hartford* v. *UPS Freight, Inc.,*
2017 WL 1927683 (N.D. Cal. May 10, 2017) ........................................................15

*North* v. *Samsung SDI Am., Inc.,*
2020 WL 1984020 (N.D. Cal. Apr. 27, 2020) ........................................................11

*Park* v. *Dole Fresh Vegetables, Inc.,*
964 F. Supp. 2d 1088 (N.D. Cal. 2013) ....................................................................6

*Piper Aircraft* v. *Reyno,*
454 U.S. 235 (1981)..................................................................................................8

*Posven, C.A.* v. *Liberty Mut. Ins. Co.,*
303 F. Supp. 2d 391 (S.D.N.Y. 2004).......................................................................9

*R. Griggs Grp. Ltd.* v. *Consolidated Shoe, Inc.,*
1999 WL 226211 (N.D. Cal. Apr. 9, 1999) ..............................................................9

*Reibman* v. *Renesas Elecs. Am., Inc.,*
2014 WL 251955 (N.D. Cal. Jan. 7, 2014) ...............................................................8

*Republic of Kaz.* v. *Ketebaev,*
2018 WL 2763308 (N.D. Cal. June 8, 2018) ............................................................8

- iii -

*Rycz* v. *Superior Ct. of San Francisco Cnty.*,
  81 Cal. App. 5th 824 (2022) ..............................................................................4, 11

*Saleh* v. *Titan Corp.*,
  361 F. Supp. 2d 1152 (S.D. Cal. Mar. 21, 2005) ....................................................12

*Stewart Org., Inc.* v. *Ricoh Corp.*,
  487 U.S. 22 (1988)......................................................................................................5

*Sweet-Reddy* v. *Vons Cos.*,
  2007 WL 841792 (N.D. Cal. Mar. 20, 2007)..............................................................7

*In re Uber Rideshare Cases*,
  Case No. CJC-21-005188 (Jan. 23, 2023) ....................................................... *passim*

*Van Dusen* v. *Barrack*,
  376 U.S. 612 (1964)..................................................................................................5, 9

*Van Mourik* v. *Big Heart Pet Brands, Inc*,
  2018 WL 3549122 (N.D. Cal. July 24, 2018)....................................................13, 15

*Vu* v. *Ortho-McNeil Pharm., Inc.*,
  602 F. Supp. 2d 1151 (N.D. Cal. 2009) ....................................................6, 7 ,14 ,15

*Williams* v. *Bowman*,
  157 F. Supp. 2d 1103 (N.D. Cal. 2001) ..................................................................7, 9

*Yi* v. *Uber Techs., Inc.*,
  2018 WL 5013568 (N.D. Ill. Oct. 15, 2018)................................................................2

*Zut* v. *Harrah's Ent., Inc.*,
  2013 WL 5442282 (N.D. Cal. Sept. 30, 2013) ....................................................11, 18

**STATUTES**

28 U.S.C. § 1332..............................................................................................................6

28 U.S.C. § 1391(b)(2) ....................................................................................................6

28 U.S.C. § 1404(a) ................................................................................................ *passim*

N.Y. VEH. & TRAF. LAW §§ 1691 *et seq.* ...............................................................13, 15

N.Y. VEH. & TRAF. LAW § 1692(1) ...............................................................................18

N.Y. VEH. & TRAF. LAW § 1692(2)(a) ...........................................................................15

N.Y. VEH. & TRAF. LAW § 1692(6) ...............................................................................16

N.Y. VEH. & TRAF. LAW § 1696 .....................................................................................16

N.Y. VEH. & TRAF. LAW § 1699 .....................................................................................16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 43 ...........................................................................................................11

Fed. R. Civ. P. 45(c) ................................................................................................11

Laura Palumbo, Seeing the Whole Survivor: *Why It's Necessary to Talk About Identity for Survivors as Individuals and in Groups*, Nat'l Sexual Violence Res. Ctr. (Feb. 25, 2019), https://www.nsvrc.org/blogs/seeing-whole-survivor-whyits-necessary-talk-about-identity-survivors-individuals-and-groups ................................2

RAINN, *Scope of the Problem: Statistics*, https://www.rainn.org/statistics/scope-problem ................................................................................................................3

RAINN, *Statistics*, https://www.rainn.org/statistics (last visited June 2023) ................................2

RAINN, *Survivor Stories*, https://www.rainn.org/survivor-stories (last visited June 2023) ................................................................................................................2

Sarah M. Greathouse et al., A Review of the Literature on Sexual Assault Perpetrator Characteristics and Behaviors, Rand Corp. (2015), https://www.rand.org/content/dam/rand/pubs/research_reports/RR1000/RR10 82/RAND_RR1082.pdf (last visited June 2023) ................................2

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**PRELIMINARY STATEMENT**

3     This action arises out of allegations that Plaintiff, a Michigan resident, was allegedly

4 sexually assaulted by an independent contractor driver, also likely a New York resident, during a

5 ride in New York.  Plaintiff nevertheless brought her claims almost 3,000 miles away from New

6 York, in federal court in California.

7     The proper forum for this action is the Northern District of New York, where the incident

8 occurred - - not this Court.  Both the private and public interest factors analyzed under 28 U.S.C.

9 § 1404(a) favor transfer to New York.  Plaintiff resided in New York at the time of the incident.

10 The alleged tortfeasor is last known to reside in New York.  The primary witnesses to the alleged

11 incident and its consequences are located in New York.  And New York has a far greater interest

12 than California in adjudicating this case, including through the application of New York tort law

13 and the New York regulations governing the operations of Uber and other Transportation Network

14 Companies ("TNCs") within its borders.  Transferring this case would be more convenient to the

15 parties and potential witnesses and will serve the interests of justice.

16     That Uber has one of its headquarters in California does not change the analysis.  Uber is

17 a global operation that includes dozens of offices all over the country and is locally regulated

18 wherever it does business, governed by a patchwork of different state laws and regulations specific

19 to TNCs.  Thus, decision-making is not centralized in California - - but takes place across the

20 country, including in New York.  As Judge Orrick held on a similar fact pattern, even if California

21 has "some interest in seeing this case decided here," that interest does not outweigh the interests

22 of the state in which the alleged incident occurred and tort was committed.  The state of the incident

23 has a "more substantial [interest] because the activities alleged to give rise to Doe's suit occurred

24 there."  *Jane Doe* v. *Uber Techs., Inc.*, 2017 WL 2352032, at *1 (N.D. Cal. May 31, 2017) (the

25 "Minnesota Action") (granting Uber's motion to transfer venue).

26     Transfer in favor of the state where the only eyewitnesses and most other potential

27 witnesses reside is especially appropriate in a case alleging sexual assault. The highly

28 individualized and intensely private experiences of such survivors heighten the necessity and

DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S
MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF NEW YORK          CASE NO. 3:23-cv-3482-JSC

importance of firsthand witnesses - - many of whom are located in New York.[1]  What precisely happened on the date of the alleged assault and exactly what Plaintiff experienced thereafter - - *e.g.*, what, if any, trauma Plaintiff suffered and what, if any, medical or emotional damages Plaintiff incurred - - can be known only from the witnesses who were there: law enforcement officials, family members and acquaintances, therapists and treating physicians, and others who can testify to Plaintiff's experience.  New York is likely where these witnesses are most accessible.

It is for these reasons that this Court and the California state courts have granted motions for the transfer of cases under § 1404(a), as well as motions for the stay or dismissal of cases on *forum non conveniens* grounds, in personal injury cases involving alleged incidents that took place out-of-state.  *See, e.g.*, *Minnesota Action*, 2017 WL 2352032; Order on Uber's Motions to Stay or Dismiss Based on *Forum Non Conveniens*, *In re Uber Rideshare Cases*, Case No. CJC-21-005188 (Jan. 23, 2023) (the "California Action") (Declaration of Randall S. Luskey in Support of Uber's Motion to Transfer Venue to the District of New York ("Luskey Decl.") Ex. 1; Request for Judicial Notice ("RJN") ¶ 1) (granting *forum non conveniens* relief in two actions); *Yi* v. *Uber Techs., Inc.*, 2018 WL 5013568 (N.D. Ill. Oct. 15, 2018).

The Court should do the same here and should grant transfer to the Northern District of New York, the state in which the alleged events underlying this action occurred.

---

[1] *See generally*, RAINN, *Statistics*, https://www.rainn.org/statistics (last visited June 2023); *see also* Sarah M. Greathouse et al., A Review of the Literature on Sexual Assault Perpetrator Characteristics and Behaviors, Rand Corp. (2015), https://www.rand.org/content/dam/rand/pubs/research_reports/RR1000/RR1082/RAND_RR1082.pdf (last visited June 2023); Laura Palumbo, Seeing the Whole Survivor: *Why It's Necessary to Talk About Identity for Survivors as Individuals and in Groups*, Nat'l Sexual Violence Res. Ctr. (Feb. 25, 2019), https://www.nsvrc.org/blogs/seeing-whole-survivor-whyits-necessary-talk-about-identity-survivors-individuals-and-groups ("Every survivor's experience is unique and valid. Although there are many ways survivors relate to one another in their experience of trauma and journey to healing – a survivor's experience is uniquely shaped by their personal history, identity, context, culture, and community."); RAINN, *Survivor Stories*, https://www.rainn.org/survivor-stories (last visited June 2023) ("No one person's story is alike. No one survivor's experience is the same.").

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.       Background on Uber.**

Uber is an international company with dozens of offices all over the United States. Declaration of Alejandra O'Connor ("O'Connor Decl.") ¶ 4.  It is a technology company that uses its proprietary technology to develop and maintain digital multi-sided marketplace platforms. O'Connor Decl. ¶ 3.  Some specific examples of platforms Uber has developed include the Rides platform (connecting riders with independent drivers) and the Eats platform (merchants, delivery people, and eaters).  *Id.*  Unfortunately, the connections enabled by these platforms are not insulated from societal issues that span the globe.  Sexual assault is one such issue.[2]

**II.      Background on this Complaint.**

Plaintiff alleges, on November 22, 2018, in the area of Saratoga Springs, New York, her friend used the rider version of the Uber App to request a ride for Plaintiff.  Compl. ¶¶ 6, 66, 68. During the ride, the independent driver with whom Plaintiff was connected allegedly raped and beat her.  *Id.* ¶¶ 70-71.  Plaintiff's friend tracked Plaintiff's location based on Plaintiff's cellphone and found the parking lot where the independent driver allegedly parked and raped Plaintiff.  *Id.* ¶¶ 68-69, 71.  Soon after, Plaintiff claims to have gone to the hospital where she underwent medical treatment.  *Id.* ¶ 72.

The independent driver - - the alleged principal tortfeasor - -  lived in New York at the time of the alleged assault. O'Connor Decl. ¶ 5. Despite the fact that the alleged incident occurred in New York, the alleged assailant was a New York resident, and other primary witnesses (including law enforcement officers, medical personnel, Plaintiff's friend as well as potentially other unknown witnesses who may have knowledge of the incident) likely live in New York, Plaintiff brought this action against Uber in the Northern District of California on July 13, 2023.  Plaintiff asserts claims for negligence, vicarious liability, and product liability, among others.  Though Plaintiff's Complaint does not name the accused independent driver as a defendant, Uber may choose to bring crossclaims against him, in which case, New York likely is the only state where personal jurisdiction over the alleged assailant can be exercised.

[2] RAINN, *Scope of the Problem: Statistics*, https://www.rainn.org/statistics/scope-problem.

### III.   Background on Similar Decisions in Other Uber Cases.

This would not be the first time that § 1404(a) has been applied to transfer a personal injury case brought against Uber.  In a similar case, this court granted transfer under § 1404(a) to the state in which the alleged incident occurred: Minnesota.  *See Minnesota Action*, 2017 WL 2352032. The court first recognized that the plaintiff, as a Minnesota resident, deserved "only minimal deference" for her choice of forum.  *Id.* at *5.  It then weighed heavily the fact that "the majority of the evidence and key third party witnesses are in Minnesota," including the plaintiff and alleged assailant driver.  *Id.* at *1; *see also id.* at *8.  Another factor weighing heavily in the court's analysis was Minnesota's "substantially stronger" local interest.  *Id*. at *8.  The court was not persuaded that Uber's maintenance of a headquarters in San Francisco altered the analysis, finding that "Minnesota has a greater interest in protecting a Minnesota citizen against assault and battery than California does."  *Id.*

Several California state court judges have found the same.  One recent decision is particularly notable.[3]  Just months before Plaintiff filed her Complaint in this Court, a California judge granted *forum non conveniens* relief to Uber in two cases brought by out-of-state plaintiffs alleging sexual assault by out-of-state drivers in locations outside of California.  *California Action*, CJC-21-005188 (Luskey Decl. Ex. 1; RJN ¶ 1).  Balancing the public and private interests required for a *forum non conveniens* analysis, which are substantially similar to those required for a § 1404(a) analysis,[4] the court determined that the cases belonged in the states in which the alleged

---

[3] Other relevant state court decisions include: *Jane Doe* v. *Uber Techs., Inc*., CGC-17-556481 (San Francisco Super. Ct. Aug. 11, 2017) (Luskey Decl. Ex. 2; RJN ¶ 2) (granting *forum non conveniens* relief in favor of the state where the alleged incident occurred); *Jane Doe* v. *Uber Techs., Inc.,* CGC-19-579901 (San Francisco Super. Ct. Mar. 24, 2020) (Luskey Decl. Ex. 3; RJN ¶ 3) (same); *Gorne & Walker* v. *Uber Techs*., Inc., CGC-19-575852 (San Francisco Super. Ct. July 1, 2019) (Luskey Decl. Ex. 4; RJN ¶ 4) (same); *Rycz* v. *Superior Ct. of San Francisco Cnty*., 81 Cal. App. 5th 824 (2022) (granting Uber's motion to transfer venue to a different county, where alleged incident occurred).

[4] "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system."  *Brown* v. *DetailXPerts Franchise Sys., LLC*, 2020 WL 5106842, *5 (N.D. Cal. Aug. 31, 2020) (quoting *Atl. Marine Const. Co.* v. *U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013)); *see also Decker Coal Co*. v. *Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ("*Forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion.").

DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S
MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF NEW YORK     CASE NO. 3:23-cv-03482-JSC

assaults occurred. *Id.* at 1, 6, 14–15.  Regarding the private factors, the court considered whether the cases were more properly characterized as "individual sexual assault/misconduct cases," or "corporate misconduct cases," and concluded that the former characterization was more appropriate than the latter. *Id.* at 11.  As such, the location of the witnesses and evidence in the states of the alleged incidents carried more weight than the location of Uber's headquarters.  As to the public factors - - which the court determined controlled here - - the court held that the states where the alleged assaults occurred had a far greater interest than California in adjudicating "cases involving injuries that occur within their borders, and in the application of their laws to regulate the conduct of defendants alleged to be responsible for those injuries." *Id.* at 14–15.[5]

The analysis conducted in these other cases is applicable here; these decisions reflect that transferring a case to the state where the alleged incident occurred is appropriate.

## **LEGAL STANDARD**

A district court may transfer a civil action "to any other district or division where it might have been brought" if the transfer is for the convenience of the parties and the witnesses and is in the interest of justice.  28 U.S.C. § 1404(a).  The purpose of this provision is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen* v. *Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).  To determine if a transfer of venue is appropriate under § 1404(a), courts apply a two-part test. *First*, courts consider whether the case could have been brought in the proposed transferee district. *Second*, courts undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc.* v. *Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

---

[5] The January 23, 2023 Order relating to these two cases is currently on appeal, along with a subsequent order issued on February 28, 2023 in which the court applied the January 23, 2023 order to the other non-California cases in the coordinated proceeding.

## ARGUMENT

**I.    This Case Could Have Been Brought in New York.**

As a threshold matter, courts considering transfer must first determine whether the "case could have been brought in the forum to which the moving party seeks to transfer the case." *Park* v. *Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013). "This includes demonstrating that subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought." *Metz* v. *U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).

Each would have been proper here in the Northern District of New York. Just as this Court does, the Northern District of New York would have diversity subject matter jurisdiction over this matter under 28 U.S.C. § 1332. Uber does not dispute that the Northern District of New York would be able to exercise personal jurisdiction over Uber in this matter. Finally, venue in the Northern District of New York is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of New York: the alleged assault. Compl. ¶¶ 66-70.

**II.   The Private Interest Factors, Including the Convenience of the Parties and Witnesses, Favor Transfer.**

The private interest factors - - *i.e.*, the convenience of the parties and witnesses - - weigh heavily in favor of transfer. Factors relevant to the convenience inquiry include, among other things, plaintiff's choice of forum, the relative ease of access to sources of proof, and the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses. *Decker Coal Co.*, 805 F.2d at 843; *Vu* v. *Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).

**A.    The Northern District of New York Is More Convenient for the Parties.**

In deciding a motion to transfer, courts "consider the relative convenience to all the parties involved in the lawsuit of the competing fora." *Flexible Funding, LLC* v. *Iron Mountain Info. Mgmt.*, 2005 WL 2431241, at *3 (N.D. Cal. Sept. 30, 2005). For the following reasons, the Northern District of New York is plainly the more convenient venue.

1.     <u>Plaintiff is Not a Resident of This District and Her Decision to File Here Is Entitled Minimal Consideration.</u>

Neither Plaintiff nor the incident are connected to the state of California.  She resides in another state, and the incident took place in New York, which suggests that the proposed transferee venue is likely to be more convenient to her than the Northern District of California, to which she has no apparent connection other than the fact that her attorneys are based there.  The fact that Plaintiff's counsel may be located in California "is not an appropriate factor for the Court to consider when deciding a motion to transfer." *Vu*, 602 F. Supp. 2d at 1157.  And Uber is prepared to litigate in the Northern District of New York, which renders it a convenient venue for Uber as well.

The deference ordinarily accorded to Plaintiff's choice of forum is "***substantially reduced***" when the plaintiff "does not reside in the venue ***or*** where the forum lacks a significant connection to the activities alleged in the complaint." *Williams* v. *Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (emphasis added); *see also Sweet-Reddy* v. *Vons Cos.*, 2007 WL 841792, at *2 (N.D. Cal. Mar. 20, 2007) ("considerably less weight" due to nonresident plaintiff's choice of forum in case involving no significant activities in the forum); *Foster* v. *Nationwide Mut. Ins. Co.*, 2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007) ("Where forum-shopping is evident, however, courts should disregard plaintiff's choice of forum.").  Here, Plaintiff does not reside in the Northern District of California, Compl. ¶ 11, which is reason enough to "substantially reduce[]" any deference owed to her choice of forum.  But in addition to that fact, the Northern District of California also lacks a significant connection to the core event at issue in the Complaint, the alleged assault in New York.  *See Lapachet* v. *Cal. Forensic Med. Grp., Inc.*, 2017 WL 3917209, at *3 (N.D. Cal. Sept. 7, 2017) (according "substantially reduced deference to Plaintiff's choice of forum" where the plaintiff was not a resident of the district and there was a "relatively minimal nexus between this District and the injuries Plaintiff suffered" in the Eastern District of California (the transferee court), regardless of allegations that those injuries "were 'set into motion' by policies and procedures set at [defendant's] headquarters in" the Northern District of California (the transferor district)).

1    For the same reasons, the courts in the California Action and the Minnesota Action declined

2    to recognize a presumption in favor of plaintiffs' choice of California courts. *California Action*,

3    CJC-21-005188, at 8–9 (Luskey Decl. Ex. 1; RJN ¶ 1); *Minnesota Action*, 2017 WL 2352032, at

4    *4-5. Likewise, Plaintiff's decision to file this action in this district - - for whatever putative

5    benefit Plaintiff believes this venue affords - - is entitled minimal, if any, consideration.

6          2.    New York Is the Only State That Can Provide Complete Resolution and
7                Process and Transfer Will Therefore Avoid Parallel Proceedings.

8    The Northern District of New York is convenient to all parties because fair and complete

9    resolution of the parties' claims can be obtained only in New York, where there is personal

10   jurisdiction over the accused independent driver, in connection with this alleged incident.

11   Although Uber has legal claims (express and implied indemnity and contribution) against the

12   accused independent driver, Uber likely cannot name him in a cross-complaint because, in all

13   likelihood he is a New York resident with no connections to California, and thus he will not be

14   subject to personal jurisdiction in California. *See* O'Connor Decl. ¶ 5. By contrast, New York

15   courts have general jurisdiction over the accused independent driver because he resided in New

16   York. *Republic of Kaz.* v. *Ketebaev*, 2018 WL 2763308, at *13 (N.D. Cal. June 8, 2018) ("For an

17   individual, the paradigm forum for the exercise of general jurisdiction is the individual's

18   domicile." (quoting *Goodyear Dunlop Tires Ops., S.A.* v. *Brown*, 564 U.S. 915, 924 (2011))).

19   Because the accused independent driver is likely not subject to this Court's personal

20   jurisdiction, he cannot be joined in this action by Plaintiff, nor impleaded by Uber, unless the

21   action is transferred to New York. *See Reibman* v. *Renesas Elecs. Am., Inc.*, 2014 WL 251955, at

22   *5 (N.D. Cal. Jan. 7, 2014). It would waste judicial resources and risk the possibility of

23   inconsistent rulings if claims against the alleged assailant driver were to be litigated in a separate

24   action in a separate forum. *Piper Aircraft* v. *Reyno*, 454 U.S. 235, 259 (1981) ("It is true, of course,

25   that if [defendants] were found liable after a trial . . ., they could institute an action for indemnity

26   or contribution . . . . It would be far more convenient, however, to resolve all claims in one trial.");

27   *Contact Lumber Co.* v. *P.T. Moges Shipping Co.*, 918 F.2d 1446, 1452 (9th Cir. 1990) (holding

28   that "the inability to implead other parties *directly involved* in the controversy is a factor which

- 8 -

weighs against the retention of jurisdiction" (emphasis in original)); *Yi*, 2018 WL 5013568, at *4 ("allowing the case to proceed in [the transferee court] avoids potentially duplicative litigation, as a judgment against Defendants would likely result in them bringing suit against [the driver] in [the transferee court]").

For these reasons, "district courts across the country have frequently transferred venue to allow a defendant to implead a party who is not subject to personal jurisdiction in the transferor court." *Kawamura* v. *Boyd Gaming Corp.*, 2012 WL 6047728, at *17 (D. Haw. Dec. 5, 2012).[6] Transfer of this case to the Northern District of New York would obviate the need to dismiss this action for failure to join the alleged assailant driver, an indispensable party. *R. Griggs Grp. Ltd.* v. *Consolidated Shoe, Inc.*, 1999 WL 226211, at *3 (N.D. Cal. Apr. 9, 1999) ("Transfer is preferable to dismissal whenever another district with proper venue exists."); *Van Dusen*, 376 U.S. at 634 (noting that § 1404(a) was "broadly designed to allow transfer instead of dismissal").

**B.    The Northern District of New York Is More Convenient for Potential Witnesses.**

1.    The Relevant Evidence and Witnesses Are Located in New York.

Plaintiff alleges she was sexually assaulted in New York by a New York resident, and many of the witnesses who may have knowledge relating to the alleged incident and its consequences are located in New York.  The convenience of the non-party witnesses, therefore, strongly favors venue in the Northern District of New York.

Based on Uber's records, including allegations in the Complaint, it is apparent there are a number of third parties who likely reside in New York and who may be significant witnesses in this action.[7]  At a minimum, these witnesses include: (1) Plaintiff's friend and her boyfriend who

---

[6] *See also, e.g.*, *Kay* v. *Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 854–55 (S.D. Ohio 2007) (transferring venue to allow impleading of a third-party defendant); *Posven, C.A.* v. *Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004) (same); *Biggers* v. *Borden, Inc.*, 475 F. Supp. 333, 337 (E.D. Pa. 1979) (same); *United States* v. *Casey*, 420 F. Supp. 273, 277 (S.D. Ga. 1976) (same).

[7] "To demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Bowman*, 157 F. Supp. at 1108. At this stage, Uber does not possess complete information regarding the names and addresses of

DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S
MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF NEW YORK          CASE NO. 3:23-cv-03482-JSC

allegedly encountered Plaintiff soon after the alleged assault, and who may have relevant information regarding the allegations in Plaintiff's Complaint, Compl. ¶¶ 69-70; and (2) healthcare providers at the New York hospital where Plaintiff was allegedly examined and/or treated soon after the alleged assault, who may have relevant information regarding the damages and injuries Plaintiff allegedly suffered, *id.* ¶ 72.

As it usually does, discovery will likely reveal other local witness, including other individuals who witnessed or communicated with Plaintiff and/or the alleged assailant about the alleged assault who may have relevant information regarding the event and allegations in Plaintiff's Complaint and/or the damages and injuries Plaintiff allegedly suffered.  Luskey Decl. ¶ 2(b).  For example, the independent driver may have spoken to friends or family regarding the alleged incident and Plaintiff may have spoken to or interacted with other hotel staff beyond the aforementioned security employee.  *Id.*  In light of the fact that the accused independent driver resided in New York, O'Connor Decl. ¶ 5, and all of the alleged events occurred in New York, Compl. ¶¶ 11, 67-70, it is not unreasonable to presume at this stage that many of these potential witnesses will be in New York.  *Blankenship* v. *Medtronic, Inc.*, 2013 WL 3322031, at *4 (C.D. Cal. June 7, 2013) (concluding that non-party witnesses would likely be in Missouri "based upon Plaintiff's core claims" that she was injured during a surgery in Missouri).

Although Plaintiff will undoubtedly argue that some of these witnesses may be located outside of New York, or that some New York-based witnesses would be willing to travel to California, it bears repeating that "*all* of these non-party 'damages witnesses' are located" in New York.  *Minnesota Action*, 2017 WL 2352032, at *6 (emphasis in original).  That exact argument was rejected in the case in which Judge Orrick ordered transfer to the District of Minnesota.  *Id.* That some less crucial witnesses may not consider California inconvenient does not justify "needlessly inconvenienc[ing]" numerous witnesses who would have to "travel[] 2,000 miles from their district of residence for a trial in California."  *Id.*

---

the individuals described in Plaintiff's Complaint, but endeavors by this brief and the supporting Declarations to provide information within its possession.

DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S
MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF NEW YORK     CASE NO. 3:23-cv-03482-JSC

1

2.      The Northern District of New York Can Compel Critical Witnesses to Testify at Trial, While the Northern District of California Cannot.

2

3        Not only would it inconvenience the many New York -based non-party witnesses to retain

4   this case in California, it would also put them - - and whatever critical testimony they may have -

5   - beyond the reach of this Court's compulsory process.  *See, e.g. Dawson* v. *Medtronic, Inc.*, 2013

6   WL 3322040, at *3 (C.D. Cal. Mar. 8, 2013).  Although all of the potential witnesses who reside

7   in New York are within the subpoena power of the Northern District of New York, they (and their

8   records) are well beyond the hundred-mile reach of this Court's compulsory process power.  Fed.

9   R. Civ. P. 45(c) (providing for compulsory process within 100 miles of where the witness lives,

10  works, or regularly transacts business in person).

11       Even if Uber and Plaintiff are able to depose these critical witnesses in New York, Uber

12  will not be able to compel an unwilling witness to testify at trial here.  *See Coleman* v. *Mallinckrodt*

13  *Enter. LLC*, 2019 WL 1779574, at *2 (N.D. Cal. Apr. 23, 2019) ("Witness convenience is largely

14  about *trial convenience* for non-party witnesses." (emphasis added)).   As the court in the

15  Minnesota Action held, Uber should not be denied the right to compel live testimony from critical

16  witnesses before the jury, lest it be "hampered in its defense of this case."  *Minnesota Action*, 2017

17  WL 2352032, at *6; *North* v. *Samsung SDI Am., Inc*., 2020 WL 1984020, at *8 (N.D. Cal. Apr.

18  27, 2020) ("The unavailability of process to compel the attendance of non-party witnesses for trial

19  in California weighs in favor of a transfer."); *Zut* v. *Harrah's Ent., Inc.*, 2013 WL 5442282, at *3

20  (N.D. Cal. Sept. 30, 2013) (same).  Live testimony is far more meaningful than recorded testimony,

21  particularly in a case of such a sensitive nature as one involving sexual assault.  *See* Fed. R. Civ.

22  P. 43 advisory committee's note to 1996 amendment.   In a different case involving Uber, the

23  California Appellate Court rejected the proposition that remote testimony is an adequate substitute

24  for live trial testimony: "One operating assumption of our system of justice has long been that the

25  opportunity to observe witnesses 'upon the stand and the manner in which they gave their

26  testimony . . . in no small degree aid[s] in the determination of the truth and correctness of

27  testimony.'" *Rycz*, 81 Cal. App. 5th at 841 (quoting *Pac. Coast Title Ins. Co.* v. *Land Title Ins.*

28  *Co.*, 97 Cal. App. 2d 829, 834 (1950)).  Limiting to videos the jury's ability to assess the character

- 11 -

and credibility of so many central witnesses is not fair.  Nor is it necessary where, as here, there is a more convenient forum.

Perhaps the most important witness to this action, the alleged assailant, likely resides in New York.  This fact is crucial because not all witnesses are given equal weight in a § 1404 analysis: the court must consider "the importance of the witnesses."  *Saleh* v. *Titan Corp.*, 361 F. Supp. 2d 1152, 1161 (S.D. Cal. Mar. 21, 2005).  Trial testimony by the accused independent driver - - the only eyewitness (that we know of) to the alleged assault other than Plaintiff - - will undoubtedly play a significant role in this action.[8]  Judge Orrick recognized this, observing that the independent driver would be a "key witness" whose presence in Minnesota weighed in favor of transfer.  *Minnesota Action*, 2017 WL 2352032, at *6.

Even if there were only some of these New York connections, there could be no reasonable dispute that this is a New York litigation matter with New York witnesses and New York evidence.  Where, as here, much of the witnesses and evidence relating to the alleged incident and its impact on the plaintiff is centered in the alternate venue, transfer to that venue is appropriate.

### C.   The Location of Uber's Corporate Headquarters Does Not Render the Northern District of California a More Convenient Venue.

Despite the fact Plaintiff, the independent driver, many key witnesses and substantial evidence will be located in New York, Plaintiff may argue California is a proper venue for this litigation because Uber maintains a headquarters here and, as a result, information related to corporate decision-making must be present here.  This is unpersuasive for at least two reasons.

*First*, this is a lawsuit about a sexual assault allegedly committed by a New York resident that took place in New York, not, as Plaintiff suggests in her Complaint, a case about corporate fraud.  Indeed, the court in the California Action found it more appropriate to characterize the underlying cases as "individual sexual assault/misconduct cases" than as "corporate misconduct cases" because "to prevail . . . Doe must first prove that an assault took place."  *California Action*,

---

[8] As discussed above, the independent driver who allegedly assaulted Plaintiff was not joined by Plaintiff in this action and likely cannot be joined or impleaded in this Court due to lack of personal jurisdiction.

DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S
MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF NEW YORK     CASE NO. 3:23-cv-03482-JSC

CJC-21-005188, at 11 (Luskey Ex. 1; RJN ¶ 1) (quoting *Minnesota Action*, 2017 WL 2352032, at *3). On that basis, the court accorded less weight to the location of Uber's headquarters than the location of the witnesses and evidence in the state of the alleged assault. *Id.* at 10–11. Likewise, in the Minnesota Action, the court outright rejected the plaintiff's claim that "the core disputes in this case hinge on questions of [Uber's] corporate misconduct and fraud." *Minnesota Action*, 2017 WL 2352032, at *4. The same analysis applies with equal force here. This is fundamentally a case about sexual assault, and the much of the evidence essential to this dispute, from parties and non-parties alike, is located in New York, where that alleged assault occurred.

*Van Mourik* v. *Big Heart Pet Brands, Inc*, 2018 WL 3549122 (N.D. Cal. July 24, 2018), is instructive. There, the plaintiff, who brought consumer protection claims against a dog food manufacturer, argued that because the defendant "was formerly headquartered in California and made marketing decisions there," the action belonged in California federal court. *Id.* at *1. The court rejected this argument, reasoning that the location of the defendant's headquarters was "not enough to outweigh" the fact that the plaintiff lived, saw the advertising, and purchased the product outside of California, and sought redress under a different state's law. *Id.*

Similarly, here, Plaintiff, a non-California resident, claims to have relied on Uber's marketing and other statements when using the Uber App in New York, which, according to Plaintiff, "direct[ly] and proximate[ly]" resulted in her alleged injuries, suffered in New York. Compl. at ¶¶ 175–84. She now seeks redress that will most likely be governed by New York tort law. Moreover, Plaintiff cannot recover damages in this action, if at all, without first establishing that the accused independent driver assaulted her, the proof of which would be located *in* New York. *See California Action*, CJC-21-005188, at 11 (Luskey Decl. Ex. 1; RJN ¶ 1) (quoting *Minnesota Action*, 2017 2352032, at *3). Those facts cannot be outweighed by Uber's presence in California.

*Second*, although Uber maintains a corporate headquarters in California, it is not centralized in California. Uber operates its business on a state-by-state basis in compliance with local regulations. In New York, for example, Uber operates in compliance with the regulatory scheme set forth by the New York legislature, *see* N.Y. Veh. & Traf. Law §§ 1691 *et seq.* The

- 13 -

local regulation of TNCs is not unique to California (or New York), but is rather part of the patchwork of dissimilar laws and regulations in the many states where Uber does business, each of which has a specific interest in the operating of ride-sharing businesses within its borders. Because of its nationwide (and indeed, worldwide) obligations, Uber has dozens of offices across the country.  O'Connor Decl. ¶ 4. Plaintiff can hardly assume that relevant Uber operations, employees, and information will be located in California.  Coupled with the locus of the alleged incident and attendant evidence, the fact Uber is regulated and situated all across the country plainly outweighs the fact that it maintains headquarters in California.

**III.   The Public Interest Factors Favor Transfer.**

The public factors include, among other things, the competing forums' respective local interests in the controversy, the unfairness of burdening citizens in an unrelated forum with jury duty, the costs of resolving a dispute unrelated to the forum in which the plaintiff filed, and familiarity of each forum with the applicable law.  *Allred* v. *Innova Emergency Med. Assocs., P.C.*, 2018 WL 4772339, at *5 (N.D. Cal. Oct. 1, 2018) (citing *Lueck* v. *Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001)); *Vu*, 602 F. Supp. 2d at 1156; *Chesapeake Climate Action Network* v. *Export-Import Bank*, 2013 WL 6057824, at *3 (N.D. Cal. Nov. 15, 2013).

Here, as was the case with respect to the California Action, the public interest factors "weigh heavily in favor of transfer" because "foreign states have a substantial interest in cases involving injuries that occur within their borders, and in the application of their laws to regulate the conduct of defendants alleged to be responsible for those injuries." *California Action*, No. CJC-21-005188, at 11, 14 (Luskey Ex. 1; RJN ¶ 1).

**A.   Local Interest and the Burden on the Courts and the Jury.**

New York's local interest in the controversy is greater than that of California.  As the California Action found, "because the harm[] Plaintiff[] allegedly sustained occurred outside California, California's interest in providing Plaintiff[] a forum is outweighed by that of the state[] where [her] injuries occurred." *Id.* at 14.

New York residents and jurors have a more compelling interest than California jurors in adjudicating cases involving alleged sexual assaults alleged to have been committed in New York

by New York residents.  Plaintiff cannot credibly argue that the California court system and California jurors should shoulder the burden of hosting such litigation.  When "none of the events related to this dispute occurred in this district" and "no witnesses or evidence exist in this district," the "imposition of jury duty on the citizens of this district" is an "unnecessary burden . . . better left to the citizens and courts of the district . . . where many of the events related to this dispute occurred."  *Hyundai Space & Aircraft Co.* v. *Boeing Co.*, 1999 WL 910131, at *5 (N.D. Cal. Oct. 12, 1999); *Nat'l Fire Ins. Co. of Hartford* v. *UPS Freight, Inc.*, 2017 WL 1927683, at *5 (N.D. Cal. May 10, 2017) (similar); *see also Davidson* v. *United Auto Credit Corp.*, 2020 WL 8968956, at *3 (C.D. Cal. Oct. 23, 2020) ("[I]n the absence of factors establishing sufficient connections to this forum, [residents] should not be required to sit on a jury to resolve the claims of a Virginia resident concerning events that occurred in Virginia.").

Further, where generations of New York judges have shaped that state's tort and personal injury common law, New York surely has an interest in seeing that common law applied by a New York court to redress injuries to plaintiffs that occur in New York.  New York has a "much greater interest than California" in deciding an action that "seeks redress under [New York] law."  *Van Mourik*, 2018 WL 3549122, at *1-2.  "When an action involves an incident occurring in a particular locale, there is a public interest in having the controversy adjudicated in that locale, rather than in a remote forum."  *Gilmore-Webster* v. *Bayou City Homebuyers Inc.*, 2019 WL 1100492, at *11 (N.D. Cal. Mar. 8, 2019) (citation omitted) (finding that, in case with California plaintiff, "Texas has a greater local interest because the lion's share of the events occurred in Texas" and granting transfer); *Vu*, 602 F. Supp. 2d at 1157 (holding the Central District has stronger interest because "the events giving rise to plaintiff's claims took place [there]").

New York has local interests extending beyond local tort law.  For instance, New York has a specific regulatory interest in the operation of TNCs within its borders and it has expressed that interest.  *See* N.Y. VEH. & TRAF. LAW §§ 1691 *et seq.*  New York has an interest in seeing its own laws and regulations applied to incidents involving TNCs in New York, and these very regulations may affect Plaintiff's claims in the instant action.  For example, New York regulates the means and manner by which drivers provide services to riders.  *See, e.g., id.* § 1692(2)(a) (requiring TNCs

to obtain specific permits in order to operate in the state); *id.* at § 1696 (requiring TNC drivers to obtain specific permits in order to operate in the state); *id.* at § 1699 (requiring background check and driving record reviews of all TNC drivers); *id.* at § 1692(6) (requiring TNCs to provide riders with electronic receipts with additional information about their ride).  Insofar as these state and local New York regulations relate to this action, New York courts should not be denied the opportunity to consider, apply, and enforce local policy concerning independent drivers and Uber. *See Gorne*, CGC-19-575852, at 3 (Luskey Decl. Ex. 4; RJN ¶ 4) ("Washington also has an interest in ensuring that Uber and Uber drivers comply with local rules and regulations in conducting business in Washington."); *Minnesota Action,* 2017 WL 2352032, at *8 (observing that Minnesota has an "interest in the conduct of corporations operating in Minnesota").

By contrast, California has no significant interest in adjudicating a dispute involving an incident allegedly perpetrated by a New York resident in New York, involving the application of New York law, regulations, and public policy.  California itself, through its courts, has stated that it "ha[s] little or no interest in litigation involving injuries incurred outside of California by nonresidents." *California Action*, No. CJC-21-005188, at 14 (Luskey Decl. Ex. 1; RJN ¶ 1) (quoting *Morris* v. *AGFA Corp*., 144 Cal. App. 4th 1452, 1467 (2006).  The only connection this lawsuit has to the state of California is that Uber - - a company with global operations and global offices that is regulated locally in the hundreds of jurisdictions in which its Rides platform is used - - has one of its headquarters here.  This is not dispositive.  *See Minnesota Action*, 2017 WL 2352032, at *8 ("While [] California has some interest in seeing this case decided here, as Uber is headquartered in San Francisco, Minnesota's interest is more substantial because the activities alleged to give rise to Doe's suit occurred there.").

The interest of the New York public in resolving claims arising from assaults by New York perpetrators within New York communities outweighs any comparatively insignificant interest that the California public might have in adjudicating such claims in California courts, even where they involve an international company that has a headquarters in California.  California courts and jurors should not be burdened by adjudicating out-of-state-cases.

- 16 -

### B.     Litigation Costs – Avoiding Unnecessary Expenses and Duplicative Litigation

"Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions." *Italian Colors Rest.* v. *Am. Express Co.*, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003); *Park*, 964 F. Supp. 2d at 1095 (same).  As explained above, much of the direct evidence relating to the alleged incident and its consequences is located in New York, including the witnesses.

More specifically, New York is the likely home of Plaintiff's friend and her boyfriend who interacted with Plaintiff after the alleged incident, as well as where healthcare providers who spoke to and/or treated Plaintiff after the alleged incident are located.  Luskey Decl. ¶ 2(a)-(b); Compl. ¶ 68-69, 72.  It may also be home to other individuals to whom Plaintiff and/or the alleged assailant driver may have spoken about the incident.  Luskey Decl. ¶ 2(b).

Perhaps most critically, as discussed above, if Uber pursues its indemnity and contribution claims against the accused independent driver (based on the agreement that the driver executed with Uber), it must do so in an action that is litigated in New York, where the independent driver is subject to personal jurisdiction.  As a consequence, if this Motion is denied, there may either be two separate court cases arising from the same alleged incident proceeding in two forums (this one and one in New York) or Uber may move to dismiss this action for failure to join the alleged assailant driver, an indispensable party.

Neither outcome favors judicial economy and neither is cost efficient for the parties or the federal court system.  The costs associated with this litigation would be reduced by both Plaintiff's and Uber's claims being litigated together in the only venue where that is possible: New York. *Fein* v. *Public Serv. Coordinated Transp.*, 165 F. Supp. 370, 371 (E.D. Pa. 1958) (In a § 1404(a) analysis, "the ability to implead a third party is a very important consideration.  There is no reason why two lawsuits should be needed [when] transfer will eliminate a perfectly useless additional trial").  Thus, litigating in New York will reduce the costs of litigation, and this factor favors transfer.

### C. Familiarity with Applicable Law.

Though it need not be decided on this Motion, New York law is likely to apply to this case. Thus, the public interest factor of familiarity with local law favors transfer.  Here, the alleged incident occurred in New York.  Even if there will be a debate about whether New York or California conflicts of laws principles govern here, that is ultimately inconsequential, because under either state's analysis, New York substantive law will likely be deemed to apply.[9]

Not only will New York law likely apply to the tort law questions posed by these cases, New York's "tort and regulatory laws [] set[] the standards by which Uber's liability for alleged sexual misconduct or sexual assaults by its drivers are likely to be determined." *California Action*, No. CJC-21-005188, at 15 (Luskey Decl. Ex. 1; RJN ¶ 1); *see also Zut*, 2013 WL 5442282, at *4 (N.D. Cal. Sept. 30, 2013) ("[T]he District of Nevada will undoubtedly be more familiar with applying Nevada's state codes, any applicable local ordinances, and the substantive negligence and premises-liability law of Nevada that will likely be at issue in this case.").  For example, Plaintiff's causes of action as they relate to negligent hiring and retention, and common carrier liability, will require the court to look to and apply New York tort laws and New York regulations, which include provisions exempting TNCs from laws governing common carriers.  N.Y. Veh. & Traf. Law § 1692(1) ("A TNC or a TNC driver shall not be deemed a common carrier"); *see, e.g.*, Compl. ¶ 10 (alleging Uber is a common carrier).  Allowing Plaintiff's case to remain in California, although it will likely be governed by the regulatory and tort law of New York, the state in which Plaintiff was allegedly injured, would undermine the public's interest in trying cases in the forum most familiar with the applicable law.  *California Action.*, No. CJC-21-005188, at 15 (Luskey Decl. Ex. 1; RJN ¶ 1).  This factor favors transfer.

---

[9] *See, e.g.*, *Dawson*, 2013 WL 3322040, at *2 (California federal court finding "a strong possibility" that the law of the state of incident would apply); *Cooney* v. *Osgood Machinery, Inc.*, 81 N.Y.2d 66, 72 (1993) (holding that the "law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders").

1

## CONCLUSION

2         For the foregoing reasons, Defendants respectfully request that the Court transfer this case

3 to the Northern District of New York.

4

5 DATED:  August 9, 2023                **PAUL, WEISS, RIFKIND, WHARTON &**
                                            **GARRISON LLP**

6

7                               By:     */s/ Randall S. Luskey*

8                                         RANDALL S. LUSKEY
                                        ROBERT ATKINS

9

10                               *Attorney for Defendants*
                              UBER TECHNOLOGIES, INC.

11                               and RASIER, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28